## Black's Estate.

*Wills—Construction—Lapse of legacy—Heirs and assigns as words of substitution.*

1. Intestacy is repugnant to the idea of the intention of one leaving a will, and every ingenuity and rule of construction ought to be marshaled to defeat such a happening.

2. A testator's intention must be gathered from the language of the will, and its inexorable legal effect may not be disregarded, but in applying the rules of law, the nature of the estate and the perspective of the testator will have greater weight than the construction of words.

3. A testatrix by her will divided the residue of her estate into four parts, three of which she gave to children and grandchildren of her deceased husband's brothers and sisters and the fourth to her husband's sister, and in case of her death before the testatrix, "her share shall be payable to her son R., his heirs and assigns forever." She used the words heirs and assigns only as to the four residuary bequests and not as to the other bequests. Both the sister and her son died before the testatrix, but she made no change in the bequest: *Held*, that this legacy did not lapse, but should be awarded to the daughter of the sister's son, as the will showed with sufficient clearness an intention to substitute her as a legatee.

Exceptions to adjudication. O. C. Lancaster Co., April T., 1924, No. 98.

*Henry Maltzburger*, for exceptions; *B. Frank Kready*, for accountant.

SMITH, P. J., June 4, 1925.—The testatrix bequeathed one-fourth of the residue of her estate "to the grandchildren of my (her) late husband's brother, William Black, their heirs and assigns forever, share and share alike." An exception to the *per stirpes* award to the grandchildren is sustained. To each grandchild was due and is now awarded an equal amount. In transcribing this, mistake was made.

### Black's Estate.

An afterthought suggests that error may be found in the interpretation which has been put on the testatrix's intention expressed in the following paragraph of the will:

"One equal one-fourth share of which I give and bequeath to my late husband's sister, Mary M. Rowe; and in case of the death of the said Mary M. Rowe before the time of my decease, I direct that said one-fourth share shall be payable to her son, Dr. Ross B. Rowe, of Reading, Pa., his heirs and assigns forever."

Both Mary M. Rowe and her son, Dr. Ross B. Rowe, died before the testatrix. He died first and left one child, Dorothy B. Rowe, who has filed exceptions to the decree disallowing her claim as a legatee. Neither Mary M. Rowe nor Dr. Rowe was of a class entitled to statutory protection against lapses. At first blush, there would seem to be no escape from the conclusion that the legacy lapsed, and the only way by which lapsing of this legacy can be overcome is by finding from the whole will an expressed contrary intention. A testator's intention must be gathered from the language of the will, and its inexorable legal effect may not be disregarded, but in applying the rules of law, the nature of the estate and the perspective of the testator will have greater weight than the construction of words.

The following are the insisting parts of the will:

"I hereby give and bequeath to my cousin Bertha Cochran Landis, of Lancaster, Pa., the residence in which I now reside, situated on East Main Street, Strasburg, Pa., adjoining the property of Milton H. Ranck and others."

Following this are eleven money bequests. The form of each is the same, as: "I give and bequeath to my cousin, Ada Cochran, . . ." "I give and bequeath to my cousin, Effie Frazer. . . ."

Next comes:

"All the rest, residue and remainder of my estate, I direct shall be divided into four equal shares.

"One equal one-fourth share of which I give and bequeath to the grandchildren of my late husband's brother, William Black, their heirs and assigns forever, share and share alike.

"One equal one-fourth share of which I give and bequeath to the children of my late husband's brother, Thomas A. Black, their heirs and assigns forever, share and share alike.

"One equal one-fourth share of which I give and bequeath to my late husband's sister, Mary M. Rowe; and in case of the death of the said Mary M. Rowe before the time of my decease, I direct that said one-fourth share shall be payable to her son, Dr. Ross B. Rowe, of Reading, Pa., his heirs and assigns forever.

"One equal one-fourth share of which I give and bequeath to the children of my late husband's sister, Jane D. Martin, deceased, their heirs and assigns forever, share and share alike."

There can be no doubt that it was the intention of the testatrix to give the residue of her estate to the kin of her husband, and she chose his brothers and sisters as the classifying progenitors: "to the grandchildren of my late husband's brother, William Black, their heirs and assigns . . ."—"to the children of my late husband's brother, Thomas A. Black, their heirs and assigns . . ." —"to the children of my late husband's sister, Jane D. Martin, deceased, their heirs and assigns. . . ." The form is changed in the bequest under which the exceptant claims:

"One equal one-fourth share of which I give and bequeath to my late husband's sister, Mary M. Rowe; and in case of the death of the said Mary M.

Black's Estate.

Rowe before the time of my decease, I direct that said one-fourth share shall be payable to her son, Dr. Ross B. Rowe, of Reading, Pa., his heirs and assigns forever."

The words heirs and assigns are commonly used to indicate an absolute bequest or devise. It is exceptional when a substitutional meaning is given to them. It will be noted that neither in the devise to Bertha Cochran Landis nor in any of the bequests of money did the testatrix use "heirs and assigns." Therefore, she did not apply them as is usually done. But when she came to dispose of the residue of her estate, she couples them with each bequest. One dare not say that this was done without design. It indicates a plan or scheme which is consistent with an intention to substitute "heirs" in the event of the death of those first preferred. If some extrinsic evidence had been submitted, it would have been helpful. It is a fair inference that the testatrix's reason for choosing the residuary legatees from three degrees of consanguinity was because those of an earlier generation had died. The first "one equal one-fourth share" bequeathed is to the grandchildren of her husband's brother William. It is probable that William was then dead, as were also his children, the parents of these grandchildren. The children of Thomas A. Black and Jane D. Martin, doubtless, were chosen for a similar reason. It appears as if Mary M. Rowe was the only one of her husband's generation then living. But however that may be, the discriminating recognition of the three degrees of kindred demonstrates a desire to exclude none in any degree of that relationship.

There is another feature not wanting in significance. The testatrix makes a provision in anticipation of the death of Mary M. Rowe before her. In that event, she does not say that she gives and bequeaths to Dr. Rowe, but she directs "that said one-fourth share shall be payable to her son, Dr. Ross B. Rowe, of Reading, Pa., his heirs and assigns forever." The peremptory "shall" linked with "payable," suggestive of recompense, something "justly due," distinguishes this bequest, made for turning over a part of her estate to Dr. Rowe or his heirs, from a lapsable legacy. If this legacy lapsed, under the law, when the testatrix made her will, the amount of it would have dropped into intestacy, which is repugnant to the ideas of the intention of one leaving a will, and every ingenuity and rule of construction ought to be marshaled to defeat such a happening.

The testatrix republished her will by a codicil of Oct. 4, 1921, and again by one of Aug. 15, 1922, and by one of May 3, 1923. Dr. Ross B. Rowe died in 1918 and Mary M. Rowe in 1919. That the testatrix knew of these deaths is more than probable, but she made no change in the bequest intended for the branch of the family represented by them. It is not unreasonable to associate this thought with the idea that she believed that the bequest as expressed was sufficient to vest it in the "heirs," and that she so intended. While such a presumption will not lend much force to the argument, it, nevertheless, may be a floating straw showing the direction of the current; and in seeking for testamentary intentions, one may not despise the little things.

From a personal acquaintance, we know that the testatrix's husband's name was Ross. That Dr. Ross B. Rowe was named for his uncle is not improbable. Maybe the middle initial letter "B" is for "Black." This, too, is only a straw, but it drifts in the direction of the substitutional pool. These voluntaries may be called not inappropriate exhalations of the atmosphere of the will.

Let us suppose that all the other primary residuary legatees had died before the testatrix, and the form of their bequests is not as favorable as the one under consideration, would the intention of the testatrix be so obscure as to

compel a decree declaring a lapsing of the entire residuary estate? If not, there is no reason for denying the exceptant the legacy.

We find that the testatrix with sufficient clearness expressed the intention to substitute the exceptant as a legatee, and this conclusion is in harmony with the facts and circumstances of the case. Therefore, her exceptions are sustained. As reformed, the adjudication is confirmed absolutely.

From George Ross Eshleman, Lancaster, Pa.